UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RONALD EDWARD WILLIAMS,

      Plaintiff,

v.                       Civil Action No. 2:17cv35

NANCY A. BERRYHILL,
*Acting Commissioner of*
*Social Security,*

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Ronald Edward Williams seeks judicial review of the Commissioner of Social Security ("Commissioner")'s denial of his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Specifically, Williams claims that the Administrative Law Judge ("ALJ")'s determination of residual functional capacity ("RFC") failed to account for his need for a walker, and that the ALJ relied on testimony from the vocational expert ("VE") that did not accommodate the same.

This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated below, this report recommends that the court AFFIRM the final decision of the Commissioner by GRANTING the Commissioner's Motion for Summary Judgment (ECF No.

14) and DENYING Williams' Motion for Summary Judgment (ECF No. 12).

## I.   PROCEDURAL BACKGROUND

On June 28, 2012, Williams filed an application for DIB and SSI.  R. at 107-08, 210.  He alleged that he was disabled as of February 1, 2009.  R. at 210.  He alleged his disability was due to sleep apnea, left shoulder injury, diabetes, high blood pressure, and arthritis.  R. at 257.  The state agency denied his application initially.  R. at 147.  It did so again upon reconsideration.  R. at 158.  Williams then requested an administrative hearing from the Social Security Administration. R. at 173-74.  An ALJ conducted a hearing on October 14, 2015. R. at 33.  Williams was represented by an attorney.  R. at 32, 209.  At the hearing, Williams amended his claimed disability onset date to June 22, 2012.  R. at 44, 243.

On November 3, 2015, the ALJ denied Williams' claims for DIB and SSI.  R. at 26.  The ALJ found Williams was not disabled between June 22, 2012, and November 3, 2015.  R. at 15, 26.  The Appeals Council denied Plaintiff's request for review on November 16, 2016.  R. at 1.  Williams filed the present action seeking review of the administrative proceedings below on January 18, 2017.

## II. FACTUAL BACKGROUND

Williams was born in 1968. See R. at 24. He completed the ninth grade and participated in special education classes. R. at 258. Before stopping work, he was employed as a laborer and a janitor. Id.

The relevant portions of Williams' medical history are summarized here, as are the portions of the administrative proceedings below that are relevant to his arguments in this court.

a. History of Medical Treatment and Evaluation.

Prior to his proposed disability onset date, Williams experienced a number of other impairments, including non-insulin dependent diabetes, hypertension, blurry vision, obesity, degenerative joint disease of the left hip, sleep apnea, and an injury to his left shoulder. R. at 346, 521, 671, 675, 704. After a previous proceeding before one of the Social Security Administration's ALJs on February 12, 2012, Williams was found to have a defined period of disability lasting from February 1, 2009, to March 1, 2010. R. at 15, 83-84. This disability was related to the following impairments: diabetes mellitus, peripheral neuropathy, degenerative joint disease of the left shoulder. R. at 77. He subsequently returned to work. R. at 248. At the 2012 hearing, the ALJ concluded from Williams' return to work that he was no longer disabled at that point, and

3

that Williams' disability benefits be stopped after March 2, 2010. R. at 83.

In 2011, from March to December, Williams worked as a janitor. R. at 248. From December 2011 to June 2012, he worked as a general laborer. R. at 248. Williams stopped working on June 22, 2012, after reportedly having a heat stroke and being laid off by his employer. R. at 257. The heat stroke he claims led to his termination occurred on June 15, 2012. R. at 468. On June 17, 2012, he sought emergency room treatment for chest pain, pain in his left calf, shortness of breath, left arm numbness, and pain radiating from his left face. Id. The evaluating physicians found his condition "unremarkable" and assigned him to chest pain observation protocols. R. at 466. He was ultimately diagnosed with "acute precordial pain, cardiac unlikely, probably musculoskeletal." R. at 467. He was discharged with a prescription for ibuprofen. R. at 466-67. On February 12, 2013, Williams again sought emergency room treatment for chest pain, and again received an unremarkable evaluation. R. at 444.

On March 12, 2013, Dr. Chris Bovinet, a consulting physician on behalf of the Agency, examined Williams in connection with his social security disability claim. R. at 368. Williams denied difficulty with personal care and most light housework, though he did claim difficulty with laundry and

4

yardwork.  R. at 370.  He had no difficulty getting on and off the examination table.  R. at 371.  Regarding Williams' extremities, Dr. Bovinet noted,

> There is no clubbing, cyanosis or edema.  There is no focal atrophy nor contractures noted.  There is bilateral joint line tenderness to palpation to medial and lateral joint spaces anteriorly.  There is no instability with varus and valgus stress testing at 0 and 30 degrees.  Negative anterior and posterior drawer.  No erythema, warmth or effusions noted. There is minimal crepitus noted with active range of motion in the patellofemoral joint space and right greater than left knees.

R. at 372.  Additionally, his range of motion was normal in all joints tested.  R. at 372. 3755.  He had a strong, balanced gait.  R. at 372.  He had 5 of 5 strength in his lower extremities including hip flexion, hip extension, abduction, knee flexion, and knee extension.  R. at 373.  Dr. Bovinet also noted Williams exhibited "good dorsiflexion and plantar flexion and great toe extension."  Id.  His reflexes in his knees and ankles was 2+, symmetrical and intact.  Id.  Williams refused to squat during the examination, saying he could not recover from a squatting position.  Id.  He also refused to hop, saying he was unable to do so.  Id.  Dr. Bovinet noted Williams had "[n]egative straight leg raise bilaterally.  No significant tenderness to palpation in the paravertebral muscles of the cervical or thoracolumbar spine."  Id.

Dr. Bovinet's diagnosis of Williams was that he had

(1) Left upper extremity numbness without any weakness

(2) Obesity

(3) Bilateral knee pain with possible osteoarthritis

(4) Obstructive sleep apnea

(5) Diabetes mellitus

(6) Hypertension which is well controlled

Id.

Dr. Bovinet also assessed Williams' functional capacity. Williams had "some mild limitations" from his left arm numbness and bilateral knee pain. Id. Notwithstanding those limitations, he could still stand six hours out of an eight-hour work day. Id. He could walk for two hours out of an eight-hour work day. Id. He could carry 50 pounds occasionally or 25 pounds frequently. Id. He could lift 100 pounds occasionally or 50 pounds frequently. Id. Dr. Bovinet said Williams "should be able to bend, stoop, crouch, and squat occasionally and limited by his bilateral knee pain [sic] although this is not fully evaluated today as [Williams] refused to do squatting, but otherwise had no limitations during the examination." R. at 374. The doctor concluded by saying, "Claimant does not require nor utilize any assistive device for ambulation whether it be long distances, short distances, or uneven terrain." Id.

6

On May 16, 2013, Williams was treated for what he described as "hurting all over." R. at 695. On his musculoskeletal examination, the treating physician described his gait as antalgic and noted he favored his left. R. at 696. His posture was normal. Id. His right hip was painful with all motion, while his left hip was normal. Id. He was tender on the right at the bursa. Id.

Williams underwent a number of treatments during the spring and summer of 2013 for vision and balance problems. See R. at 646 (floaters in right eye on May 20), 438 (dizziness on May 27), 402 (loss of vision in right eye June 20-27).

While in the hospital for his vision loss in June 2013, Williams underwent a lumbar puncture[1] to help his doctors evaluate his optic neuritis. See R. at 428. This test resulted in some radicular pain in his lower right leg. See R. at 402. He also underwent an MRI scan, which showed partial lumbarization of the L1 vertebral body, mild central canal stenosis at L5-S1, and multilevel degenerative changes. R. at 429-30. On discharge, he was diagnosed with optic neuropathy, uncontrolled diabetes, hypertension, and obesity. R. at 402.

---

[1] More commonly known as a "spinal tap," a lumbar puncture is a diagnostic test in which a needle is inserted between two lumbar bones to remove a sample of cerebrospinal fluid. The procedure is often used to test for infection or nervous system disorders. Lumbar Puncture, The Mayo Clinic (Dec. 6, 2014), https://www.mayoclinic.org/tests-procedures/lumbar-puncture/basics/definition/prc-20012679.

On July 11, 2013, during a neurological examination, Williams was found to have normal gait and station. R. at 641.

On July 15, 2013, Williams underwent an MRA angiography of his neck; the study's results were normal. R. at 621.

On September 12, 2013, in connection with an examination at which a treating physician noted Williams had fared well in his treatment for migraine headaches, the doctor encouraged him to walk and stop consuming sugared drinks in order to lose weight. R. at 639.

On October 12, 2013, Williams went to the emergency room complaining of lower back pain. R. at 387. The treating physician described a history of "increasing sciatica-type distribution pain, going down from his right back down to his for [sic] right hip, anterior thigh and posterior thigh area." Id. Also, "it hurt[] when he moves to some extent, but it hurt[] all the time anyway." Id. Williams showed minimal right-side lumbar tenderness, no muscle spasms, good digital sensation, motor strength, and pulses in his legs. R. at 388. He received palliative medication, which successfully reduced his pain. Id. On this occasion, Williams was diagnosed with "[A]cute sciatica secondary to lumbar degenerative disc disease." Id. Williams later submitted a statement to the ALJ from a "disability advocate" saying Williams was prescribed a walker at this October 12, 2013, emergency room visit, R. at

319, but the medical records from that visit record no prescription for any type of assistive device on that day. R. at 388. The disability advocate's statement was undated, and the ALJ did not refer to it in his report. R. at 319; see also R. at 15-26.

On January 28, 2014, Williams again sought treatment for lower back pain and a "dripping" sensation in his temples. R. at 654. In spite of his reported back pain, he could tandem gait normally and walk on his toes and heels. R. at 655. Williams was prescribed anti-inflammatories and referred for physical therapy. R. at 656.

On February 15, 2014, while seeking emergency room treatment for a headache, the doctor noted Williams had recurrent lumbar back pain with a herniated disc and occasional numbness in both legs. R. at 381-82. The doctor noted Williams' stance and gait were normal. R. at 382.

Between February 12, 2014, and March 5, 2014, Williams underwent four physical therapy sessions to treat his lower back. R. at 634-37. Williams reported he was keeping up with his exercises and consequently increasing his strength and endurance. See R. at 635-36. In his last session, he reported he had helped his mother move and was in "10/10" pain as a result. R. at 634.

On March 24, 2014, Dr. McGuffin, a state agency medical consultant, reviewed Williams' file and determined Williams could occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; stand or walk six hours in an eight-hour work day; sit six hours in an eight-hour work day; and occasionally climb ramps and stairs, kneel, crouch, and crawl. R. at 119-20.

On November 9, 2014, Dr. Asuncion, Williams' treating physician, completed a Medical Source Statement. R. at 705. This document reported Williams' optic neuritis and degenerative disc disease. Id. It also listed various limitations on Williams' ability to stand, walk, and lift weights. R. at 707. Dr. Asuncion also stated that Williams did not need any assistive device for balance or ambulation. Id.

b.  Testimony Before the Administrative Law Judge.

Williams testified he stopped working entirely on June 22, 2012. R. at 44. He told the ALJ he had back problems that prevented him from bending over. R. at 49. He also told the ALJ that, most days, he had to spend five or six hours per day in his reclining chair because of pain. R. at 50. He testified he could stand for 30 minutes and walk for 15 minutes before having to sit. R. at 51. He complained of being unable to sit for more than an hour at a time. R. at 52. He reported being unable to assist with household work, leaving the cooking, cleaning, and other tasks to his wife. R. at 52; see also R. at

56 (unable to assist in shopping or sit through entire church service). Williams told the examiner he used a walker "[a]ll the time." R. at 51. He also told the ALJ he had been prescribed the walker during an emergency room visit related to back pain in 2013. R. at 61.

In addition to testimony from Williams, the ALJ considered the testimony of Edith Edwards, a Vocational Expert ("VE"). The ALJ presented Edwards with a hypothetical addressed to Williams' limitations:

> I want you to assume a hypothetical individual of the claimant's age, education, and work background. Assume further this individual is limited to sedentary work. He can lift and carry from waist to chest level, walk no longer than one block at a time on a flat, even surface, with an assistive device, can stand no longer than 15 minutes before having to sit, can sit up to one hour before standing for a few minutes for comfort. The individual has to avoid climbing ladders, ropes, and scaffolds, crawling, kneeling, and crouching, but can stoop occasionally, requires work involving a limited education, avoid fast-paced work, such as assembly line jobs involving production quotas, is limited to occasional fingering, grasping, handling, and reaching with the left upper extremity, can finger, grasp, handle, and reach frequently with the right dominant upper extremity, avoid working around hazards such as moving dangerous machinery and unprotected heights. Could such an individual perform the claimant's past work . . . ?

R. at 57-58. The VE testified that such a hypothetical individual could not perform Williams' past work. R. at 58. She did identify several sedentary jobs such an individual could perform, including a sorter, inspector of electronic components,

and order clerk. R. at 58-59. The ALJ further inquired as to whether someone with those hypothetical limitations as well as Williams' vision problems could perform those three jobs. R. at 59. The VE said such a person could only perform the job of an order clerk. Id. In response to further questioning by the ALJ, the VE also testified that a person who, in addition to the hypothetical limitations, required the use of a walker—as opposed to a cane or wheelchair—would be able to perform none of those three jobs.[2] R. at 60.

c. <u>Decision of the Administrative Law Judge.</u>

The ALJ made the following findings after considering Williams' claim:

    (1)    The claimant meets the insured status requirements of the Social Security Act.

    (2)    The claimant has not engaged in substantial gainful activity since June 22, 2012, the amended alleged onset date.

    (3)    The claimant has the following severe impairments: diabetes mellitus with neuropathy; degenerative joint disease; obesity; hypertension; degenerative disc disease with mild spinal stenosis; and carpal tunnel syndrome.

    (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    . . .

---

[2] The VE explained the limitation resulting from the need for a walker was because employers consider it a hazard, but do not consider canes or wheelchairs to be hazards. R. at 60.

> (5) [T]he claimant has the residual functional
> capacity to perform less than a full range of
> sedentary work . . . [but was] unable to perform
> any past relevant work.

R. at 17-24 (citations omitted). The ALJ also found Williams could obtain employment, and that jobs existed in significant numbers in the national economy which Williams could perform. See R. at 24-25. As a result, the ALJ found Williams had not been under a qualifying disability from his alleged onset date, to the date of the ALJ's decision. R. at 26.

d. <u>Records Considered by the Appeals Council.</u>

After the ALJ's decision in November 2015, Williams submitted a note from Dr. Asuncion dated December 15, 2015, stating that Williams "needs a walker to get around due to back pain." R. at 6. The Appeals Council considered the note. R. at 2. In denying Williams' appeal, the Council opinion observed that the note related to Williams' condition outside the time period covered by the ALJ's decision. Accordingly, the Appeals Council found the note had no bearing or impact on its consideration of the ALJ's decision. <u>Id.</u>

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the

evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

(1)  Is the individual involved in substantial gainful activity?

(2)  Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

(3)  Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

(4)  Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

(5)  Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3)

the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

In this case, after conducting this five-step analysis, the ALJ concluded that Williams met the insured status requirements, but had not been under a disability within the meaning of the Social Security Act between his alleged disability onset date, June 22, 2012, and the ALJ's decision on November 3, 2015. R. at 26.

At step one, the ALJ found Williams had not engaged in substantial gainful activity since his alleged disability onset date, June 22, 2012. R. at 17. At step two, the ALJ found that Williams suffered from the following severe impairments: diabetes mellitus with neuropathy, degenerative joint disease, obesity, hypertension, degenerative disc disease with mild spinal stenosis, and carpal tunnel syndrome. Id. At step three, the ALJ found that Williams did not suffer from a listed impairment or combination of impairments that met the severity of one of the listed impairments. R. at 18. At step four, the ALJ found that Williams' impairments prevented him from performing his past relevant work. R. at 24. In drawing his

step four conclusion and fashioning Williams' RFC, the ALJ determined that Williams was

> limited to lifting and carrying from waist to chest level. He can walk no longer than one block at a time, on a flat, even surface with the aid of an assistive device. He can stand no longer than 15 minutes and sit no longer than one hour at a time before changing positions for a few minutes for comfort. He has to avoid crawling, kneeling, crouching, and the climbing of ladders, ropes, and scaffolds, but is able to stoop on an occasional basis. He requires work involving no more than a limited education. He has to avoid fast-paced work, such as assembly line jobs involving production quotas. He is limited to occasional fingering, grasping, handling, and reaching with his right upper extremity. He has to avoid working around hazards such as moving, dangerous machinery and unprotected heights.

R. at 20. At step five, the ALJ concluded that jobs which Williams could perform exist in significant numbers in the national economy. R. at 24-25. Consequently, the ALJ determined Williams did not have a qualifying disability during the relevant period. R. at 26.

Williams now argues the ALJ erred in determining his RFC and finding him not disabled. Williams claims the ALJ should have concluded that Williams needed a walker to ambulate and considered that requirement when determining Williams' RFC. See Pl.'s Mem. in Supp. of Summ. J. (Pl.'s Mem.) at 13 (ECF No. 13). Williams also argues the VE's assessment of what jobs were available for someone with Williams' limitations was incomplete because the ALJ did not include a requirement for a walker when

describing the hypothetical person to the VE. Id. at 15-16. Because the exclusion of the walker is the only alleged deficiency in the VE's hypothetical, the court will consider the two alleged errors together: was the ALJ's finding that Williams' did not require a walker during the alleged period of disability supported by substantial evidence?

a.  The ALJ Relied on Substantial Evidence When Making His RFC Determination that Williams Did Not Need a Walker.

After reviewing the medical evidence and the ALJ's four-page functional analysis, the undersigned finds that the RFC is supported by substantial evidence and the VE's testimony properly considered it as an accurate statement of Williams' functional limitations.

An RFC is the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see Social Security Ruling 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When, as is the case here, a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must determine the plaintiff's RFC. 20 C.F.R. 404.1520(e). At step four, the ALJ then determines whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If the ALJ determines that the plaintiff cannot perform any

19

relevant past work, as was the case for Williams, the ALJ uses the RFC at step five to determine if the plaintiff can "adjust to any other work that exists in the national economy." Id. § 404.1545(a)(5)(ii).

The ALJ is responsible for determining a plaintiff's RFC at the administrative hearing level, and in making this determination, the ALJ considers all of the relevant medical and other evidence in the record.[3] Id. §§ 404.1527(b), 404.1545(a)(3), 404.1546(c). "[R]elevant evidence . . . include[es] information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)— submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).

The ALJ, in arriving at his determination that Williams had an RFC that permitted him to work at jobs available in the national economy, reviewed at length the evidence presented to him. The ALJ then performed a function-by-function analysis, discussing the evidence and the weight he gave to the evidence. In four detailed pages of analysis, the ALJ assessed Williams'

---

[3] "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how . . . how impairment(s) and any related symptoms affect [the claimant's] ability to work. 20 C.F.R. § 404.1529(a).

statements, as well as the observations of his treating medical professionals, and determined the appropriate weight to be afforded to the opinions based on the support they received from Williams' medical records. R. at 20-24.

Specific to Williams' alleged need for a walker, the ALJ considered Williams' testimony that he had been prescribed the walker during an October 2013 hospital visit. R. at 21. Notwithstanding Williams' testimony, the ALJ was persuaded by the absence of any mention of a prescription for a walker in the voluminous record of treatment Williams offered from his doctors. R. at 21-22 (citing R. at 341-707 (entire record of medical treatment and evaluation)). He also relied on the numerous observations found in the record noting Williams' normal gait and stance. R. at 21-22. Specifically, the ALJ noted that Williams' stance and gait were described as normal after his heat stroke in June 2012; that he was not noted as using an assistive advice even though he had an antalgic gait favoring his left side; that he was treated for lower back pain in October 2013 but not prescribed a walker in his records; and that he was noted to have "normal strength, gait, and stance" in February 2014. R. at 21-22 (citing R. at 544 (notes from June 17, 2012, related to treatment for heath stroke), R. at 696 (notes from doctor's office visit on May 16, 2013), R. at 387-88 (notes from emergency room treatment for low back pain on

October 12, 2013), R. at 381 (notes from emergency room treatment for headache on February 15, 2014)). The ALJ recognized Williams' difficulty walking but determined he only required an assistive device like a cane—not a walker. R. at 20, 51-52.

The ALJ noted that, although Williams testified that he needed the walker and could not perform household tasks, he also reported he could do light housework, cook, and attempt to help his mother move. R. at 22 (citing R. at 325 (activity limitation statement from disability report submitted on March 25, 2014), R. at 370 (few claimed difficulties with household tasks in Medical Consultant Report prepared for Virginia Department of Rehabilitative Services on March 11, 2013), R. at 634 (notes describing improvement due to physical therapy on March 5, 2014)). The ALJ identified these inconsistencies and, due to the unequivocal absence in the medical records of any prescription for a walker, resolved the inconsistencies against Williams' assertion that he needed a walker. R. at 22.

The ALJ went on to observe that Williams' treating physician, Dr. Asuncion, had written specifically that, in spite of his opinion finding significant limitations on Williams' ability to ambulate effectively, he did not believe Williams required any assistive device. R. at 23 (citing R. at 706 (treating physician's medical source statement about Williams'

functional limitations). After the hearing before the ALJ, Williams obtained a note from Dr. Asuncion, which Williams presented to the Appeals Council in an attempt to correct what Williams describes as an error on Dr. Asuncion's part. Pl.'s Mem. at 14 (ECF No. 13). The note, dated more than a month after the hearing before the ALJ, says only that Williams "needs" a walker. It does not mention the detailed medical source statement which Dr. Asuncion completed in 2014 and does not state that Williams needed a walker at any time during the alleged period of disability. R. at 6. The Appeals Council considered this post-hearing evidence but did not order remand. R. at 2.

Williams argues the ALJ did not consider all relevant evidence because he did not consider the note Dr. Asuncion wrote six weeks after the hearing saying Williams "needs" a walker. Pl.'s Mot. for Summ. J. at 14 (ECF No. 13). Courts are required in a social security case to consider the record as a whole, including evidence the Appeals Council includes in the administrative record after the hearing before the ALJ. See Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). New evidence only justifies remand to the ALJ when (i) the evidence is "new," i.e. "not duplicative or cumulative," (ii) the evidence is material, (iii) the evidence relates to the period on or before the date of the ALJ's decision, and (iv)

that there is good cause for the failure to submit the evidence before the Commissioner. Id. at 95-96. As the Appeals Council noted, the note from Dr. Asuncion was written after the hearing and seems only to describe Williams' condition as of the date written, i.e. outside the alleged period of disability. See R. at 6. It therefore does not undermine the substantial evidence the ALJ relied upon in reaching his RFC decision. It bears mentioning that this evidence included records from Dr. Asuncion's treatment during the relevant time period, none of which referenced a need for any type of assistive device. See, e.g., R. at 706 (medical source statement from Dr. Asuncion dated November 19, 2014 in which the doctor specifically circles the "no" option when asked whether Williams requires any assistive device to walk).

The Appeals Council is not generally required to provide a detailed analysis of its decision regarding post-hearing evidence. Meyer v. Astrue, 662 F.3d 700,706 (4th Cir. 2011). Notwithstanding the light obligation on the Appeals Council to explain the reasoning behind its decision not to remand to the ALJ on the basis of new evidence, "'an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review.'" Id. at 706 (quoting Martinez v. Barnhart, 444 F.3d 1201, 107-08 (10th Cir. 2006). Here, the Appeals Council's express analysis of the reasons why the late record

was not relevant makes clear that the record is not a basis for remand now. In the light of the record, including the Appeals Council's express analysis, the court should find that the Council's determination that the note would not have influenced the ALJ's decision does not require remand. See R. at 2.

b.  The Administrative Law Judge Relied on Properly-Informed VE Testimony About What Jobs Williams Could Perform.

Williams also contends that the ALJ relied on testimony from the VE that did not properly account for all of his impairments. Pl.'s Mem. at 15-16 (ECF No. 13).

At a hearing for a claim on social security benefits, the ALJ poses hypothetical questions to the VE, who then offers expert opinion on what jobs are available—if any—in the national economy that could be performed by a person with those limitations. These hypotheticals must account for all of the claimant's limitations as shown by the record. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (citing Walker, 889 F.2d at 50). Failing to consider limitations shown by the evidence, and then relying upon the errant hypothetical to form an opinion about the availability of work suitable to the claimant is error. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D. Va. 2002).

As detailed above, when the ALJ formulated his hypothetical questions to the VE, the RFC the ALJ described to the VE included the limitations the ALJ found appropriate to Williams' case and deliberately omitted the need for a walker from those limitations. R. at 57-61. Because the ALJ properly formed his hypothetical questions to the VE, the VE's testimony substantially supported the ALJ's ultimate finding that Williams was capable of working at jobs available in the national economy. See R. at 24-26.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 14), DENY Williams' Motion for Summary Judgment (ECF No. 12), and AFFIRM the final decision of the Commissioner.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file written objections to the foregoing findings and recommendations within fourteen days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

26

2.    A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 15, 2017